UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| MATTHEW ALAN SCHROCK JR., | |
| Plaintiff, | |
| v. | CAUSE NO. 3:20-CV-245-JD-MGG |
| GALLIPEAU, MONICA WALA, EICHMAN, | |
| Defendants. | |

OPINION AND ORDER

Matthew Alan Schrock, Jr., a prisoner proceeding without a lawyer, was granted leave to proceed on Eighth Amendment claims against Dr. Barbara Eichman, Dr. Monica Wala, and Warden John Galipeau for inadequately treating his post-traumatic stress disorder while he was housed at Westville Correctional Facility ("WCF"). (ECF 7.) Presently before the court are separate motions for summary judgment filed by Warden Galipeau and Drs. Eichman and Wala (collectively, "the doctor-defendants").[1] (ECF 23, 27.) Warden Galipeau argues that Mr. Schrock's claim against him for injunctive relief is moot now that he has been transferred to New Castle Correctional Facility. (ECF 27.) The doctor-defendants, in turn, argue that they are entitled to summary judgment because Mr. Schrock did not properly exhaust his administrative remedies before filing

---

[1] Mr. Schrock has been served with the notice required by N.D. Ind. L.R. 56-l(f) in connection with both motions. (*See* ECF 26, 29.)

suit as required by 42 U.S.C. § 1997e(a). (ECF 23.) These motions are now fully briefed. (*See* ECF 34; ECF 36.)

Under Federal Rule of Civil Procedure 56, the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). In deciding whether a genuine dispute of material fact exists, the court must "consider all of the evidence in the record in the light most favorable to the non-moving party, and . . . draw all reasonable inferences from that evidence" in favor of that party. *Dunn v. Menard, Inc.*, 880 F.3d 899, 905 (7th Cir. 2018) (citation omitted).

The court turns first to Warden Galipeau's motion. In the screening order, Mr. Schrock was permitted to proceed against the Warden "in his official capacity to obtain permanent injunctive relief related to the provision of constitutionally adequate medical care for his mental illness." (ECF 7 at 5.) However, after the screening order issued, Mr. Schrock was transferred to New Castle Correctional Facility, and there is no indication he is likely to return to WCF any time in the near future. (*See* ECF 28-1.) Accordingly, Mr. Schrock's claim for injunctive relief against Warden Galipeau for ongoing medical care has become moot. *See Higgason v. Farley*, 83 F.3d 807, 811 (7th Cir. 1996). Although Mr. Schrock filed various documents responding to the doctor-defendants' motion for summary judgment, he has not made any objection to Warden Galipeau's motion. Therefore, Warden Galipeau will be dismissed as a defendant.

Turning to the doctor-defendants' motion, prisoners are prohibited from bringing an action in federal court with respect to prison conditions "until such

2

administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The exhaustion requirement "attempts to eliminate unwarranted federal-court interference with the administration of prisons, and thus seeks to afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006) (citation, internal quotation marks, and alteration omitted). The Seventh Circuit has taken a "strict compliance approach to exhaustion." *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). Thus, "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). "[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies." *Id.* at 1024. Failure to exhaust is an affirmative defense that the defendant has the burden of proving. *Jones v. Bock*, 549 U.S. 199, 216 (2007).

The exhaustion requirement is mandatory, and the court lacks authority to excuse a prisoner from the exhaustion requirement. *Ross v. Blake*, 136 S. Ct. 1850, 1857-58 (2016). Nevertheless, inmates are only required to exhaust administrative remedies that are actually available. *Woodford*, 548 U.S. at 102. The availability of a remedy is not a matter of what appears on paper, but rather, whether the process was in actuality available for the prisoner to pursue. *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). Thus, when prison staff hinder an inmate's ability to use the administrative process, such as by failing to provide him with the necessary forms, administrative remedies are not considered "available." *Id.* In essence, "[p]rison officials may not take unfair advantage

3

of the exhaustion requirement . . . and a remedy becomes 'unavailable' if prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting." *Dole*, 438 F.3d at 809.

Here, the undisputed facts show that at all relevant times, WCF had a grievance policy in place.[2] (ECF 25-1 ¶ 6.) Inmates at WCF are made aware of the policy during the orientation process, and copies are also available in the prison law library. (*Id.* ¶ 7.) The grievance process contains four steps: (1) an attempt at informal resolution of the problem; (2) a formal grievance submitted no later than 10 days from the date of the incident giving rise to the grievance; (3) a formal appeal to the warden or his designee; and (4) a formal appeal to the grievance manager. (*Id.* ¶¶ 9-23.) Exhaustion of the grievance process requires completion of all four steps. (*Id.* ¶ 28.)

The grievance policy also contains various provisions governing what action an inmate can take if he does not receive a proper response to his grievance or appeal. (*Id.* ¶¶ 11, 19, 23.) At step two, the grievance specialist must within five days either return the grievance with any problems noted or provide the inmate with a receipt showing that his grievance was accepted and logged. (*Id.* ¶ 11.) If the inmate does not receive either a rejection form or an acceptance form within five days of submitting a formal grievance, he is required to notify the grievance specialist of that fact, and the grievance specialist must investigate and respond to the inmate within five days. (ECF 25-1, Ex. A § XI.) If the inmate takes this step but still receives no response to his formal grievance

---

[2] The applicable grievance policy at the time of these events was the Offender Grievance Process, Policy and Procedure No. 00-02-301, in effect from October 1, 2017, to March 13, 2020. (ECF 25-1 ¶ 6.)

4

within 20 days of filing it, he may appeal to the next step as though the grievance had been denied. (ECF 25-1 ¶ 19.) Similarly, at step three, if the inmate receives no response to his appeal to the warden or his designee within five days, he may proceed to step four by appealing to the grievance manager. (*Id.* ¶ 23.)

Indiana Department of Correction ("IDOC") grievance records reflect that Mr. Schrock filed three formal grievances about various matters between May 2007 and May 2017. (ECF 25-1, Ex. B.) There is no record, however, of Mr. Schrock having filed a formal grievance or appeal related to his mental health treatment at WCF. (ECF 25-1 ¶¶ 33-35.) Nevertheless, Mr. Schrock submits multiple documents which, in his view, show that he attempted to exhaust his available administrative remedies before filing suit. First, he submits a number of "request for health care" and "request for interview" forms he submitted to medical staff between September 2018 and May 2020 regarding his mental health issues.[3] (ECF 34-2 at 1-12.) As the doctor-defendants point out, Mr. Schrock filed his complaint in March 2020, and any grievances he submitted after the case was filed would not show that he exhausted his administrative remedies *before* filing suit. *See Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004) (because exhaustion is a precondition to filing suit, an inmate cannot exhaust administrative remedies after lawsuit is filed). He likewise submits informal grievances he filed at Pendleton

---

[3] It can be discerned from these filings that Mr. Schrock wants to be designated as "Seriously Mentally Ill," or "SMI," a designation that would entitle him to certain protections and would limit the prison's ability to place him in restrictive housing for disciplinary infractions pursuant to a class-action settlement. (*See* ECF 34-2 at 91-117.) Mr. Schrock attaches medical records reflecting that in May 2018, he was classified at another facility by Dr. Clemone Esther-Rose, a non-party, as having a mental illness that causes some impairments, but not as SMI. (ECF 34-2 at 82.)

5

Correctional Facility before transferring to WCF, where Drs. Eichman and Wala are employed. (ECF 34-2 at 83-84.) There is no means for him to have preemptively exhausted his administrative remedies before the doctor-defendants became involved in his care. *See Barrow v. Wexford Health Sources, Inc.*, 793 F. App'x 420, 423 (7th Cir. 2019) (grievances filed before doctor became involved in plaintiff's medical care did not establish exhaustion of available remedies as to claim against doctor). However, the doctor-defendants agree that the health care requests he submitted to prison staff in September and October 2018 show that he attempted to informally resolve his complaint about his mental health treatment, which is the first step in the grievance process.[4] (ECF 36 at 3; *see also* ECF 34-2 at 1-4.)

That leaves the matter of whether Mr. Schrock exhausted his formal grievance remedies at steps two through four. On that point, Mr. Schrock claims that he submitted a formal grievance that was either mishandled or lost by prison staff. (ECF 34 at 14.) In support, he submits what purports to be a hand-written copy of a grievance dated November 24, 2018. (ECF 34-2 at 6.) He likewise submits what purports to be a handwritten copy of a grievance appeal, also dated November 24, 2018. (*Id.* at 7.) He

---

[4] The documentation Mr. Schrock has submitted suggests that he was less than cooperative in attempting to resolve his complaints. His filings reflect that he refused to see two different members of the mental health staff, in one instance because of the staff member's race. (ECF 34-2 at 1.) He also acknowledges telling a member of the mental health staff who was trying to engage with him to "leave [him] alone" because he did not "get along" with him. (*Id.* at 4.) A response to one of his requests for medical care reflects that on November 1, 2018, a member of the mental health staff went to speak with him, but he told them to "shove the request form up their ass." (*Id.*) Another health care request merely seeks documentation that he was taking Prozac and does not outline any untreated symptoms he was experiencing. (ECF 34-2 at 5.) Nevertheless, in light of the inferences to which he is entitled at this stage, the court will presume that these filings demonstrate that Mr. Schrock attempted to informally resolve his concerns about his mental health treatment.

claims that he never received any response to either of these documents and therefore proceeded to file this lawsuit. (ECF 34 ¶ 34.)

There is no record of the grievance and appeal Mr. Schrock provides to the court ever having been received by prison staff. (*See* ECF 25-1 ¶¶ 33-40.) The doctor-defendants question the authenticity of these documents, noting that they do not bear a file stamp or a grievance log number. (ECF 36 at 3.) Nevertheless, even accepting Mr. Schrock's account as true, the documents he submits do not show that he properly exhausted his available administrative remedies. He claims that his formal grievance was lost or mishandled, but there is no indication that he notified the grievance specialist of this fact as he was required to do under the grievance policy so that the matter could be investigated. (ECF 25-1, Ex. A § XI.) Had he done so, the grievance specialist might have been able to locate any lost or misdelivered grievance. That alone constitutes a failure to comply with the policy.

After 20 days elapsed without any response to his grievance, he was entitled to proceed to the next step as if the grievance had been denied, but here the copies of his grievance and appeal both bear the same date. (ECF 34-2 at 6-7.) It would have been impossible for him to submit both a grievance and an appeal on the same day in accordance with the policy, because he was required to allow time for a response to the grievance. (*See* ECF 25-1, ¶ 19.) Additionally, neither of these documents mention Drs. Eichman or Wala by name, nor do they contain any specifics about how his mental health problems were being inadequately treated. Rather, he complained that unnamed members of the medical staff "keep changing my psych code." (ECF 34-2 at 6-7.) His

7

complaint about internal coding procedures would not necessarily alert prison staff that he believed his mental health problems were not being adequately addressed. These documents also reference an "incident date" of November 15, 2018, but there is no indication that this date corresponds to any particular action taken by Drs. Eichman or Wala. Under these circumstances, he did not adequately alert prison officials to the nature of his complaint. *See Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011) (observing that the purpose of the grievance process is to alert officials to a problem so that corrective action can be taken); *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002) (observing that "a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought").

Even if he could overcome these issues to show that he adequately exhausted at steps two and three, he has submitted nothing to show that he completed step four by filing a second-level appeal to the grievance manager after he allegedly received no response to his first-level appeal. The grievance policy entitled him to proceed to the second-level appeal if he did not receive a response to his first-level appeal within five days. (ECF 25-1, ¶ 23; ECF 25-1, Ex. A at 20.) However, there is nothing in the record to show that he availed himself of this remedy.

In summary, because the undisputed facts show that Mr. Schrock did not exhaust his available administrative remedies before filing suit, his claims against Dr. Eichman and Dr. Wala must be dismissed without prejudice. *See* 42 U.S.C. § 1997e(a); *Pozo*, 286 F.3d at 1025.

For these reasons, Warden John Galipeau's motion for summary judgment (ECF 27) is GRANTED. The plaintiff's claim for injunctive relief against the Warden is DISMISSED as moot. Dr. Eichman and Dr. Wala's motion for summary judgment (ECF 23) is also GRANTED. The claims against them are DISMISSED WITHOUT PREJUDICE for failure to exhaust administrative remedies in accordance with 42 U.S.C. § 1997e(a). The clerk is DIRECTED to close this case.

SO ORDERED on January 26, 2021

/s/JON E. DEGUILIO
CHIEF JUDGE
UNITED STATES DISTRICT COURT

9